386 A.2d 586

**In the Interest of Hector GONZALEZ, a minor, Appellant.**

Superior Court of Pennsylvania.

Submitted June 13, 1977.

Decided April 28, 1978.

218

David R. Eshelman, Assistant Public Defender, Reading, for appellant.

J. Michael Morrissey, District Attorney, Reading, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

Hector Gonzalez, age 17, appeared before the Court of Common Pleas, Juvenile Division, of Berks County on October 18, 1976, pursuant to a petition filed on September 9, 1976, by an assistant district attorney for Berks County. The petition alleged that Hector Gonzalez was a delinquent child due to his participation in an incident involving the illegal entry of the J. C. Mumma Jewelry Store located at 446 Penn Street, Reading, Pennsylvania. On October 18, 1976, Hector Gonzalez was adjudicated a delinquent child and disposition was deferred until November 3, 1976, at which time he was placed on probation and ordered to make restitution for the damage done to the J. C. Mumma Jewelry Store. From the orders of adjudication and disposition, an appeal was taken to this Court.

Briefly, the facts indicate that on September 7, 1976, at approximately 12:40 A.M., the Reading police were notified by radio that a burglar alarm was sounding at the J. C. Mumma Jewelry Store. Officer Edward Thomas responded to the alert and proceeded to an alleyway at the rear of the jewelry store. While standing in the alley waiting for additional units to arrive, Officer Thomas saw two men jump off the roof of the Farr Shoe Store which is located in the same complex of stores as the Mumma Jewelry Store. The two individuals started running up the alley as Officer Thomas was telling them to stop. He gave chase and at the end of the alley the two turned right and were met by the K–9 corps coming down the street. The two were apprehended at this point and taken to the City Hall, where the appellant was formally charged with conspiracy to commit burglary.

Appellant raises three issues on appeal which we will deal with seriatim. Initially, it is contended that the evidence was insufficient to sustain the adjudication of delin-

quency. Since the charge of delinquency was based on the crimes of criminal conspiracy [1] and burglary [2] it was incumbent upon the Commonwealth to prove the elements of those two offenses beyond a reasonable doubt. It is beyond question that the evidence must be viewed in the light most favorable to the Commonwealth being that it was the verdict winner. *Commonwealth v. Cimaszewski*, 447 Pa. 141, 288 A.2d 805 (1972), *Commonwealth v. Miller*, 445 Pa. 282, 284 A.2d 739 (1971). The evidence established that a burglar alarm sounded notifying the police that an attempted break-in was occurring at the Mumma Jewelry Store. In response to the alarm, several police officers proceeded to the location where one officer observed two individuals jump from a building adjacent to the Mumma Jewelry Store and start running up the alley. The officer lost sight of the two for approximately five or six seconds when they turned the corner at the end of the alley. When the officer turned the corner, he observed the K–9 corps approaching from the opposite direction and apprehend the two individuals. The owner of the store testified that the partition in his store had been damaged although it was in proper repair when the store was closed earlier that evening. Also, several articles and pieces of furniture were disarranged.

It is appellant's position that no one saw the two individuals attempting to break into the store and there was no testimony establishing that there was any type of agreement to commit a burglary. Criminal conspiracy is defined in Section 903 of Title 18 of Purdon's Consolidated Statutes:

> (a) Definition of Conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

> (1) Agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

1. Act of Dec. 6, 1972, P.L. 1462, No. 334, 18 Pa.C.S. § 903.

2. Act of Dec. 6, 1972, P.L. 1462, No. 334, 18 Pa.C.S. § 3502.

(2) Agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

It is necessary for an overt act to have been done in pursuance of such conspiracy before a party can be convicted of the crime. In this case, the testimony clearly established that there had been a breaking and entering of the jewelry store, and within the premises certain objects were disarranged. That two individuals were observed by a police officer responding to the burglar alarm set off in the store jumping from an adjacent building and running up an alley. That these two individuals were apprehended a short distance from the store. And that the appellant requested a police officer to retrieve his hat from the alley behind the store. In *Commonwealth v. Larkin*, 235 Pa.Super. 19, 341 A.2d 204 (1975), we quoted a recent Supreme Court case dealing with the issue of the sufficiency of evidence necessary to sustain a conviction. At 235 Pa.Super. 19, 21, 341 A.2d 204, 205 we stated:

To sustain a conviction, the facts and circumstances which the Commonwealth prove must be such that every essential element of the crime is established beyond a reasonable doubt. Although the Commonwealth does not have to establish guilt to a mathematical certainty, and may in the proper case rely wholly on circumstantial evidence, the conviction must be based on more than mere suspicion or conjecture. [Footnotes omitted.] *Commonwealth v. Roscioli*, 454 Pa. 59, 62, 309 A.2d 396, 398 (1973).

It has also been the consistent holding of the Pennsylvania appellate courts that direct and positive evidence of a corrupt agreement is not necessary. *Commonwealth v. Dunie*, 172 Pa.Super. 444, 94 A.2d 166 (1953). An agreement may be inferred from the acts and conduct of the parties since by its very nature the crime is frequently not susceptible of proof except by circumstantial evidence. *Commonwealth v. Rosen*, 141 Pa.Super. 272, 14 A.2d 833 (1940). However, the evidence to sustain a charge of conspiracy must be such as reasonably and naturally overcomes the presumption of in-

nocence and establishes the guilt of the accused. [Citations omitted]. *Commonwealth v. Santana,* 216 Pa.Super. 183, 264 A.2d 724 (1970). In the instant case, we find that the evidence amply supports the adjudication of delinquency. There is no question that the Mumma Jewelry Store was broken into with the intent to commit theft. That two individuals were observed jumping from the roof of an adjacent building, and running down the alley behind the store, shortly after the burglar alarm went off. And that the appellant was one of the two individuals, both of whom were apprehended by the police. It is well beyond speculation and conjecture that the appellant, in concert with another person, was involved in the burglary of the jewelry store and therefore the evidence was sufficient to sustain the adjudication.

Appellant's second contention is that the trial judge erred in permitting the assistant district attorney to conduct redirect examination beyond the scope of cross-examination. "We have repeatedly held that the order of presentation of evidence is a matter which is largely within the discretion of the trial judge." *Commonwealth v. Hickman,* 453 Pa. 427, 432, 309 A.2d 564, 567 (1973). The Juvenile Act[3] states that all proceedings shall be conducted in an informal but orderly manner. This of course does not mean that all rules of evidence are abandoned. However, it does provide the judge wide latitude in assuring that the truth is brought out and the philosophy and purpose[4] of the Juvenile Act is realized. We therefore hold that the lower court acted

3. Act of Dec. 6, 1972, P.L. 1464, No. 333, 11 P.S. § 50–316(a).

4. 11 P.S. § 50–101. Short title and purposes
   (a) This act shall be known as the "Juvenile Act."
   (b) This act shall be interpreted and construed as to effectuate the following purposes:
   (1) To preserve the unity of the family whenever possible and to provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of this act;
   (2) Consistent with the protection of the public interest, to remove from children committing delinquent acts the consequences of criminal behavior, and to substitute therefor a program of supervision, care and rehabilitation;

properly in allowing the police officer to testify to matters concerning the identification of the appellant and the investigation of the jewelry store.

■ The final issue raised by appellant is that the trial judge erred in ordering him to make restitution. At the conclusion of the dispositional phase of the hearing, held approximately three weeks after the adjudicatory stage, the court ordered that restitution be made by appellant "in such amount as the probation officers determine is fair and reasonable when he earns money." This part of the disposition was objected to by appellant's counsel on the basis that there is no provision in the Juvenile Act for directing a juvenile adjudicated delinquent to make restitution. Section 50–322, Disposition of delinquent child, sets forth the permissible orders of disposition:

If the child is found to be a delinquent child the court may make any of the following orders of disposition best suited to his treatment, supervision, rehabilitation, and welfare:

(1) Any order authorized by Section 24 [§ 50–321] for the disposition of a deprived child.[5]

(2) Placing the child on probation under supervision of the probation officer of the court or the court of another state as provided in Section 34 [§ 50–331] under conditions and limitations the court prescribes.

(3) Committing a child to an institution, youth development center, camp, or other facility for delinquent children operated under the direction or supervision of the court or other public authority and approved by the Department of Public Welfare.

(4) Committing the child to an institution operated by the Department of Public Welfare or special facility for children operated by the Department of Justice.

Act of Dec. 6, 1972, P.L. 1464, No. 333, 11 P.S. § 50–322. The above quoted section clearly confines the discretion of the lower court to choosing the most appropriate of the four

5. Section 50–321 does not provide for the payment of restitution by a juvenile.

enumerated orders of disposition. Also, Section 1504 of the Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1501–1504 requires that any remedy, duty or anything directed to be done by a statute shall be strictly pursued and no penalty shall be inflicted further than shall be necessary for carrying out the dictates of the statute.

The act entitled Liability for Acts [New] [6] confronts the question of restitution in juvenile proceedings. Section 2003 states:

(a) In any proceeding of a criminal nature against a child under the age of eighteen years and in any proceeding against a child in a juvenile court, the court shall ascertain the amount sufficient to fully reimburse any person who has suffered injury to the person, or theft, destruction or loss of property because of the wilful, tortious act of the child, and direct the parents to make payment in the amount not to exceed the limitations set forth in Section 4 [7] [§ 2004] hereof. If the parents fail to comply with the direction of the court, the amount may be recovered in an action of assumpsit against the parents or either of them.

Act of July 27, 1967, P.L. 186, 11 P.S. § 2003. In *In re Gardini*, 243 Pa.Super. 338, 365 A.2d 1252 (1976), we held that the juvenile court exceeded its authority when it imposed a fine in the amount of $200 on the youth along with other proper orders of disposition. We held that the four possible dispositions set forth in section 50–322, supra, defined the limits of the court's authority and anything going beyond those four was improper. If payment of restitution by the youth was within the contemplation of the legislature it would have been included in section 50–322. Instead, the directive of restitution was confined to the statute entitled Liability for Acts [New], supra, even though

6. Act of July 27, 1967, P.L. 186, 11 P.S. § 2001 et seq.

7. § 2004. Limit of Liability; distribution; costs; fees; joint text.
(a) Liability of the parents shall be limited to three hundred dollars ($300) for injuries to the person, or theft, destruction, or loss of property suffered by any one person as a result of one wilful, tortious act or continuous series of wilful, tortious acts.

the legislature had that act before it at the time the Juvenile Act was passed. This specific omission along with the requirement that statutes be strictly construed leads to the conclusion that in proceedings involving the wilful, tortious acts of a juvenile any order of restitution must be imposed within the parameters of 11 P.S. § 2001 et seq. Therefore, that part of the lower court's order of disposition directing appellant to make restitution is reversed.

Affirmed in part and reversed in part.

HOFFMAN and SPAETH, JJ., note dissent.

The evidence was insufficient to prove that appellant committed the burglary. *Commonwealth v. Roscioli*, 454 Pa. 59, 309 A.2d 396 (1973).

WATKINS, former President Judge, did not participate in the consideration or decision of this case.