STATE OF WEST VIRGINIA

*v.*

M.D.J.

(No. 15245)

Decided March 19, 1982.

*Phillip C. Duff* for appellant.

---

*Chauncey H. Browning*, Attorney General, *Fredric J. George*, Deputy Attorney General, and *Dana D. Davis*, Assistant Attorney General, for appellee.

McHugh, Justice:

This case is before this Court on an appeal from an order of the Circuit Court of Cabell County, entered on July 30, 1980, which revoked the probation of the appellant juvenile, M.D.J., and sentenced him to serve a previously suspended sentence.

On March 5, 1980, M.D.J. was involved in a fight at Huntington High School where he was a student in the 11th grade. A petition was filed that same day in the Circuit Court of Cabell County charging M.D.J. with committing an act of juvenile delinquency. On May 2, 1980, M.D.J. entered a plea of guilty to the act of juvenile delinquency charged in the petition. An order adjudging him guilty of that act of delinquency was entered on May 6, 1980.

A dispositional hearing was held on May 7, 1980. A dispositional order was entered on June 18, 1980. That order sentenced M.D.J. to incarceration but suspended the imposition of the sentence and placed him on probation for 18 months under 11 terms and conditions. Only the eleventh condition concerns us on this appeal. That condition reads in full:

> That such probationer shall make restitution to Mary Coen, mother of the victim herein, in the sum of $1500 payable at the rate of a minimum of $100 per month, the first payment of which shall be due and payable on or before the 15th day of June, 1980, and a minimum payment of $100 due and payable on the 15th day of each month thereafter until the sum of $1500 has been paid. In the event the respondent is employed at any time hereafter, he shall pay one-half of his net earnings to the said Mary Coen on the 15th of each month if one-half of his said net earnings exceed the $100 minimum payment. However, in

no event shall the respondent pay less than $100 per month.

On June 27, 1980, M.D.J.'s probation officer, Samuel Watkins, filed a petition with the Circuit Court of Cabell Couty alleging that M.D.J. had failed to meet the conditions of his probation in that he had failed to pay the first installment of $100 dollars under the eleventh condition of his probation. On July 30, 1980, after a hearing, the trial judge revoked M.D.J.'s probation and sentenced him to commitment. This appeal followed.

Generally, restitution is a discretionary condition of probation under *W. Va. Code*, 62-12-9 [1953]. Article 12 of Chapter 62 of the *Code*, however, does not apply to juvenile cases handled under Chapter 49 of the *Code*. "[N]othing in this article shall be construed to affect in any way the laws relating to juvenile probation and parole." *W. Va. Code*, 62-12-21 [1953].

There is no provision in Chapter 49 of the *Code* analogous to *W. Va. Code*, 62-12-9 [1953]. The authority by which a trial judge can grant probation in a juvenile case is found at *W. Va. Code*, 49-5-13 [1978], which provides, in part:

(b) Following the adjudication, the court shall conduct the dispositional proceeding, giving all parties an opportunity to be heard. In disposition the court shall not be limited to the relief sought in the petition and shall give precedence to the least restrictive of the following alternatives consistent with the best interests and welfare of the public and the child: . . . .

(3) Upon a finding that the child is in need of extra-parental supervision (a) place the child under the supervision of a probation officer of the court or of the court of the county where the child has its usual place of abode, or other person while leaving the child in custody of his parent or custodian and (b) prescribe a program of treatment or therapy or limit the child's activities

under terms which are reasonable and within the child's ability to perform.

There is no question that probation cannot properly be revoked if the condition of probation allegedly violated is invalid. *Louk v. Haynes*, 159 W. Va. 482, 223 S.E.2d 780 (1976). The issue here is whether the eleventh condition of M.D.J.'s probation was a valid condition under *W. Va. Code*, 49-5-13(b)(3)(b) [1978].

We have found no cases directly on point from a jurisdiction with a statute that uses the same language as *W. Va. Code*, 49-5-13 [1978]. The State points out that Georgia has held that restitution can be made a condition of probation in juvenile cases. *See B.G. v. State*, 143 Ga.App. 725, 240 S.E.2d 133 (1977); *P.R. v. State*, 133 Ga.App. 346, 210 S.E.2d 839 (1974); *M.J.W. v. State*, 133 Ga.App. 350, 210 S.E.2d 842 (1974). The Georgia statute, however, provides that the trial judge may grant probation "under conditions and limitations the court prescribes." *Ga. Code* § 24A-2302(b). In *P.R. v. State, supra,* the court said: "Certainly these 'conditions and limitations' must include the right to order restitution. This right is inherent in the power of the court. . . ." 210 S.E.2d at 840.

In Utah there is a specific provision in the juvenile law which allows a court to "order that the child be required to repair or replace or to otherwise make restitution for damage or loss caused by his wrongful act. . . ." *Utah Code Ann.* § 78-3a-39(7). The Supreme Court of Alabama has found authority for a court to order restitution as a condition of probation in juvenile cases in statutory language which gives juvenile courts the jurisdiction and power possessed by equity courts and the further power to "make orders for his custody, discipline, supervision, care, protection and guardianship, as, in the judgment of the court will properly conserve and protect the welfare and best interests of the child." *Ala. Code* tit. 13, § 351; *Haymes v. State*, Ala., 349 So.2d 1104 (1977). The Alabama statutory provisions are now found at *Ala. Code* § 12-15-2(f) and *Ala. Code* § 12-15-71(c). An Illinois court

has inferred similar authority from statutory language which allows a judge to impose "other conditions as may be ordered by the court." *Ill. Rev. Stat.* ch. 37, § 705-3; *J.R. v. State,* 82 Ill.App. 3d 714, 38 Ill. Dec. 99, 403 N.E.2d 114 (1980).

Courts in Pennsylvania, on the other hand, declined to infer authority to order restitution as a condition of probation in juvenile cases from statutory language which provided:

> If the child is found to be a delinquent child the court may make any of the following orders of disposition best suited to his treatment, supervision, rehabilitation, and welfare: ... (2) Placing the child on probation under supervision of the probation officer of the court or the court of another state ... under conditions and limitations the court prescribes.

11 *Pa.Cons.Stat.* § 50-322. *See In re Gonzalez,* 255 Pa.Super. 217, 386 A.2d 586 (1978); *In re Frey,* 248 Pa.Super. 322, 375 A.2d 118 (1977); *In re Evans,* 246 Pa.Super. 430, 371 A.2d 914 (1977). A major factor in the Pennsylvania cases, however, was the enactment of a statute by the Pennsylvania Legislature which allowed a juvenile court to order restitution against the parents of a delinquent child. *See* 11 *P.S.* § 2003; *Gonzalez, supra,* 386 A.2d at 590; *Evans, supra,* 371 A.2d at 915.

The statutory provision quoted above is now found at 42 *Pa.Cons.Stat.* § 6352. After the decisions in the *Gonzalez* and *Evans* cases the Pennsylvania Legislature amended 42 *Pa.Cons.Stat.* § 6352 by 1978 *Pa.Laws* 202, No. 53, § 29. The statute now provides as follows:

> If the child is found to be a delinquent child the court may make any of the following orders of disposition best suited to his treatment, supervision, rehabilitation, and welfare: ...

> (2) Placing the child on probation under supervision of the probation officer of the court or the court of another state ... under conditions and limitations the court prescribes. ...

(5) Ordering payment by the child of reasonable amounts of money as fines, costs or restitution as deemed appropriate as part of the plan of rehabilitation considering the nature of the acts committed and the earning capacity of the child.

(6) An order of the terms of probation may include an appropriate fine considering the nature of the act committed or restitution not in excess of actual damages caused by the child which shall be paid from the earnings of the child received through participation in a constructive program of service or education acceptable to the victim and the court whereby, during the course of such service, the child shall be paid not less than the minimum wage of this Commonwealth. In ordering such service, the court shall take into consideration the age, physical and mental capacity of the child and the service shall be designed to impress upon the child a sense of responsibility for the injuries caused to the person or property of another. The order of the court shall be limited in duration consistent with the limitations in . . . the 'Child Labor Law.' The court order shall specify the nature of the work, the number of hours to be spent performing the assigned tasks, and shall further specify that as part of a plan of treatment and rehabilitation that up to 75% of the earnings of the child be used for restitution in order to provide positive reinforcement for the work performed.

The effect of the holdings in *Gonzales* and *Evans* has been counteracted by the Pennsylvania Legislature which has specifically authorized restitution as part of a plan of rehabilitation in a juvenile case even though the juvenile's parents may also be liable for restitution under 11 *Pa.Cons.Stat.* § 2003. We note that West Virginia and New Jersey, see the discussion of *In re D.G.W., infra,* also have statutes that impose civil liability on parents for tortious conduct of children. *W. Va. Code,* 55-7A-2 [1981]; *N.J.Stat.Ann.* § 2A:53A-15 [1979]. The existence of a separate statute imposing civil liability on parents for harm caused by their children does not necessarily

preclude an order of restitution in a juvenile case where such an order would serve the purposes of the juvenile law.

The purpose of our juvenile laws is not so much punitive as it is rehabilitative. *See State v. Van Isler,* ___ W. Va. ___, 283 S.E.2d 836 (1981); *State ex rel. D.D.H. v. Dostert,* 165 W. Va. 448, 269 S.E.2d 401 (1980). This legislative intent is reflected in the fact that a trial judge is not given absolute discretion in placing conditions upon juveniles placed on probation under *W. Va. Code,* 49-5-13 [1978]. Restitution, as a condition of probation in a juvenile case, if it is ordered at all, must be ordered as part of a program of "treatment or therapy" or as a "limit" on the child's activity. "Treatment" has been defined as including "preventive guidance and corrective training esp. of juvenile delinquents and youthful criminal offenders." *Webster's Third New International Dictionary* 2435 (1970).

In this regard, *W. Va. Code,* 49-5-13 [1978], is very similar, especially in intent, to *N.J. Stat. Ann.* § 2A:4-61, which provides:

> If a juvenile is adjudged delinquent the juvenile and domestic relations court may order any of the following dispositions: . . . . c. Place the juvenile on probation to the chief probation officer of the county or to any other suitable person who agrees to accept the duty of probation supervision for a period not to exceed 3 years upon such written conditions as the court deems will aid rehabilitation of the juvenile. . . .

The New Jersey Supreme Court, in *In re D.G.W.,* 70 N.J. 488, 361 A.2d 513 (1976), directly addressed the question of whether restitution could serve a rehabilitative purpose in juvenile cases. In holding that restitution "is a valid and may indeed be a salutory condition of a term of probation" in juvenile cases, 361 A.2d at 520, the court said:

> It is thus apparent that the legislative purpose would accomodate . . . restitution . . . as a probation condition. . . . We are bound to think, then,

that unless restitution has to be considered primarily as punishment and little or nothing else, and thus discordant with the legislative plan ... its use as a condition of probation would not fall .... The dichotomy of punitive and rehabilitative purpose and effect implicit in probation was recognized by Chief Justice Weintraub in *In re Buehrer,* 50 N.J. 501, 509, 236 A.2d 592, 596 (1967): 'The argument assumes that punishment and rehabilitation are somehow incompatible. Of course they are not .... Punishment and rehabilitation are not antagonists. Probation assumes the offender can be rehabilitated without serving the suspended jail sentence. But this is not to say that probation is meant to be painless. Probation has an inherent sting, and restrictions upon the freedom of the probationer are realistically punitive in quality.

361 A.2d at 518. The court also quoted with approval from Dressler, *Practice and Theory of Probation and Parole* 177 (1959):

Restitution may have a postive casework connotation. It offers the individual something within reason that he can do here and now, within the limits of his ability to demonstrate to *himself* that he is changing. A fine is punitive. A jail sentence is retributive. But restitution makes sense. It is every man's obligation to meet responsibilites of this sort in civil life.

361 A.2d at 519, n. 3. (Emphasis in original). *See also J.R. v. State, supra.* This issue was also discussed in *P.R. v. State, supra,* where the Georgia court said:

In cases like the one at hand in which a child's wrongful act has occasioned some loss to befall another party, it is both therapeutic and rehabilitative to require the child to make such restitution as he is able to do. Restitution is beneficial both to the child and to his victim. ...

Appellants ... would equate a fine with restitution. This would be erroneous because a fine is penal in nature with payment to the government

and with no relationship to the offense. Whereas restitution is rehabilitative in nature, is related directly to the offense, and goes to the party who has been deprived of property. Restitution is indemnification rather than forfeiture.

210 S.E.2d at 841.

We find the reasoning of these cases to be persuasive. We, therefore, hold that a trial judge may order restitution as part of a "program of treatment or therapy" designed to rehabilitate the child in a juvenile case when probation is granted under *W. Va. Code*, 49-5-13 [1978]. Such order, however, must be reasonable in its terms and within the child's ability to perform.

*W. Va. Code*, 49-5-13 [1978], in addition to allowing the trial judge to prescribe a program of treatment or therapy, has the additional requirement of reasonableness. Specifically, the program must be "reasonable and within the child's ability to perform." *W. Va. Code*, 49-5-13 [1978]. This second requirement of *W. Va. Code*, 49-5-13 [1978], is designed to serve the rehabilitative goals of the juvenile justice system. An order imposing conditions of probation that are unreasonable or beyond the ability of the child to perform, is not an order of probation at all but rather a disguised order of commitment. The frustration that would arise from the child's inherent inability to comply with an unreasonable condition of probation would negate the purpose of the statutory scheme of rehabilitation. The result of such a condition would not be rehabilitation. Rather, it would give the probationer a sense of unfairness, injustice and bitterness towards the system because the chance to reform would not be present.

In *In re D.G.W., supra*, the New Jersey Supreme Court discussed various factors which should be considered before a trial court imposes restitution as a condition of probation in a juvenile case. Among other factors the court found the child's "present and probable future ability to repay" to be a pertinent consideration in determining whether restitution was justified or reason-

able in a particular case. In a footnote to that finding the court said:

> In fixing the terms of restitution, the court will be aware that, in case of later default, in no event may the juvenile offender be institutionalized, or probation be terminated, solely becasue [sic] *inability* to pay, *Cf. Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970); *State v. DeBonis,* [58 N.J. 182, 276 A.2d 137 (1971)]. Consequently a restitution order against a school boy, for instance, without any prospect of even part-time employment (particularly under present economic conditions) might be a meaningless gesture. The judge, however, being mindful of the rehabilitation factor, might suggest a search for part-time employment as bearing on good faith amends.

361 A.2d at 522, n. 4 (Emphasis in the original). *See also In re Carroll,* 260 Pa.Super. 23, 393 A.2d 993 (1978).

We find this comment particularly telling when we look at the facts in the case before us. M.D.J. was 17 years old and a junior in high school at the time the restitution order was entered. The unemployment rate at the time for people in similar statistical categories was 31.5 percent. U.S.Dep't.Com., Bureau of the Census, *Statistical Abstract of the United States* 398 (101st ed. 1980). Under these circumstances we do not think that the order of restitution entered in this case as a condition of probation was reasonable or within the juvenile's ability to perform.

In this case the sole reason for the revocation of M.D.J.'s probation was his inability to pay the first installment of the restitution ordered. At the probation revocation hearing the probation officer testified that M.D.J. had "lived up to all the conditions of his probation. ... He has lived up very well to the rules except the restitution. There's no problem with him at all." There is also evidence in the record indicating that M.D.J. did make good faith efforts to find employment but to no avail.

This case illustrates a situtation where the purpose of the statute—the rehabilitation of juvenile offenders by the least restrictive methods—was working only to be interrupted by the enforcement of an unreasonable condition of probation that was beyond the child's ability to perform. We, therefore, reverse the order of the Circuit Court of Cabell County, entered on July 30, 1980, which revoked M.D.J.'s probation and reinstate the order of June 18, 1980, which placed M.D.J. on probation. We also strike paragraph 11 of the order of June 18, 1980, as being unreasonable and beyond the ability of the child to perform.

*Reversed.*