500 S.E.2d 519

**STATE of West Virginia, Appellee,**

v.

**KRISTOPHER G., a juvenile, and Thomas G., a juvenile, Appellants.**

No. 24025.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 15, 1997.

Decided Dec. 12, 1997.

Concurring Opinion of Justice Workman Dec. 15, 1997.

Susan Becker–Welts, Charles Town, for Appellant Kristopher G.

James T. Kratovil, Charles Town, for Appellant Thomas G.

Molly M. McGinley, Assistant Attorney General, Charleston, for Appellee.

PER CURIAM: [1]

Kristopher G. and Thomas G.,[2] brothers, appeal the amount of restitution they were ordered to pay following their adjudication as having committed delinquent acts.[3] The appellants were ordered to pay $7,947.52 in restitution. The circuit court also held their mother liable for the total amount. The appellants appeal arguing that the amount of restitution was too high, and that their mother cannot be held liable for an amount greater than our parental liability statute allows.

## I.

On May 19, 1995, Kristopher G., who was 11 years old, and Thomas G., who was nine years old, and another juvenile (not an appellant), were found by neighbors at a vacant mobile home owned by Sandra Hawkins. The neighbors noticed that the mobile home had sustained substantial damage both to the structure and to its contents. The juveniles fled the area after the neighbors arrived, but were later charged by juvenile petitions for acts which, if committed by an adult, would constitute daytime burglary, conspiracy to commit daytime burglary, and destruction of property.

On March 14, 1996, all three juveniles were found to be delinquent for the acts of daytime burglary and destruction of property. Combined restitution and dispositional hearings were conducted on May 17, 1996 and June 4, 1996. During the course of this hearing the state submitted evidence concerning the cost of repairs to the victim's property, both work already performed and work which was projected or estimated. Additionally, the state submitted as evidence the replacement costs and estimated replacement costs of those items which could not be repaired. There was further evidence that the mother of the two juveniles was unemployed, and at that time had an average monthly income of $714.00.

At the conclusion of the hearing the judge placed Kristopher G. on probation for one year of actively supervised probation and five years of unsupervised probation, for a total of six years. The judge also placed Thomas G. on probation for one year of actively supervised probation and seven years of unsupervised probation, for a total of eight years. The court further ordered restitution in the amount of $7,947.52 for which all three juveniles were to be jointly and severally liable. The court also ordered the juveniles' mother liable for this amount. This appeal followed.

## II.

In *State v. M.D.J.*, 169 W.Va. 568, 289 S.E.2d 191 (1982), we discussed our juve-

1. We point out that a *per curiam* opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4. (1992) (*"Per curiam* opinions ... are used to decide only the specific case before the Court; everything in a *per curiam* opinion beyond the syllabus point is merely *obiter dicta....* Other courts, such as many of the United States Circuit Courts of Appeals, have gone to non-published (not-to-be-cited) opinions to deal with similar cases. We do not have such a specific practice, but instead use published *per curiam* opinions. However, if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a *per curiam* opinion.")

2. As is our traditional practice, we avoid using the last names of minors in cases involving sensitive facts. *See State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994); *State ex rel. Div. of Human Serv. by Mary C.M. v. Benjamin P.B.*, 183 W.Va. 220, 395 S.E.2d 220 (1990).

3. A third child, Chad F., was also adjudicated a juvenile delinquent for his actions in this matter, however, he did not join in this appeal.

nile law in regard to applying restitution. In the Syllabus of *M.D.J.*, we stated:

> A trial judge may order restitution as part of a "program of treatment or therapy" designed to aid in the rehabilitation of the child in a juvenile case when probation is granted under *W.Va.Code*, 49–5–13 [1978 amended 1988]. Such order, however, must be reasonable in its terms and within the child's ability to perform.

In *M.D.J.* we also stated:

> An order imposing conditions of probation that are unreasonable or beyond the ability of the child to perform, is not an order of probation at all but rather a disguised order of commitment. The frustration that would arise from the child's inherent inability to comply with an unreasonable condition of probation would negate the purpose of the statutory scheme of rehabilitation. The result of such a condition would not be rehabilitation. Rather, it would give the probationer a sense of unfairness, injustice and bitterness towards the system because the chance to reform would not be present.

*State v. M.D.J.*, 169 W.Va. 568, 574, 289 S.E.2d 191, 196 (1982).

In considering whether the restitution ordered in this case complies with the requirements set forth in *M.D.J.*, we must first decide if the amount ordered was part of a program of treatment or therapy. The record does not disclose any particular program of treatment or therapy as being prescribed for these juveniles, other than general supervised and unsupervised probation. It is to be hoped that their act of vandalism was an isolated incident, the sort in which many children may become involved. We accept that the circuit judge in the instant case ordered restitution to be paid for therapeutic and rehabilitative purposes, and thus this order of restitution would meet the treatment or therapy program test.

■ To determine the reasonableness of restitution in the adult criminal context, we recently stated:

> When a court is determining the practicality of an award of restitution, a finding that there is a reasonable possibility of a

defendant's payment of a restitution award must not be based solely on chance; there must be some concrete evidence specific to a defendant showing that the defendant has assets, earning potential or other present or potential resources, or similar grounds upon which the court may conclude that there is a reasonable chance that the defendant may be able to pay the restitution amount in question.

Syllabus Point 5, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997).

■ In the instant case, there does not appear to be record evidence indicating that there "is a reasonable chance that the [juveniles] may be able to pay the restitution amount in question." Jobs available to nine and eleven year old children—or ten, or thirteen, or fourteen, or fifteen-year olds—are rare, and rarer still would be jobs which would enable these children to pay a debt of $7,947.52 (at ten percent interest)—assuming they were allowed to keep at least some of the money they made, which is a principle we have recognized in our adult restitution cases. *See Lucas, supra.*

More importantly, the record does not show that the total amount of damages assessed as restitution was properly calculated. During the restitution hearing, the state offered evidence concerning the replacement costs or estimated replacement costs of the items damaged and the estimated repair costs for those items not being replaced. While the juvenile code does not discuss how to measure restitution damages, there is discussion in the statute dealing with adult restitution. *W.Va.Code*, 61–11A–4(b)(1) [1984] states:

> (b) The order [of restitution] shall require that such defendant:
>
> (1) In the case of an offense resulting in damage to, loss of, or destruction of property of a victim of the offense
>
> (A) Return the property to the owner of the property or someone designated by the owner; or
>
> (B) If return of the property under subparagraph (A) is impossible, impractical or inadequate, pay an amount equal to the greater of: (i) The value of the property on

the date of sentencing, or (ii) The value of the property on the date of the damage, loss or destruction less the value (as of the date of the property is returned) of any part of the property that is returned.

The primary aim of section (B) is to require restitution based on the fair market value of damaged or destroyed property, either when it was destroyed or damaged, or on the date of sentencing. This section does not contemplate restitution based on repair or replacement cost. If the restitution statutes for adults do not call for restitution based upon repair or replacement cost, it would be manifestly unreasonable to require a child to be bound by the stricter standard.

■ We entirely understand and respect the sentiments of the owner of the mobile home regarding her damages. But the law does not permit civil litigants ordinarily to collect damages in excess of fair market value, and that standard is applied to restitution as well.

■ Upon remand the circuit court should recalculate the victim's damages based upon fair market value. Any restitution award should then be set in an amount that is within the realistic ability of the children to pay within a reasonable period of time,[4] so that they can complete a probationary period, put these events behind them, and move forward.

Therefore, we reverse the order of June 4, 1996 and remand this matter to the circuit judge for further proceedings in light of our ruling.[5]

Reversed and remanded.

4. We note that the extraordinarily long periods of probation imposed by the circuit court (more than half a decade) appear to be tied to hoped-for repayment of the restitution award by the time these children are in their mid- to late teens. We do not think that probation for children should ordinarily be extended for years and years, unless they have longstanding and extremely severe problems. Particularly, probation should not be extended for years and years simply for the purpose of assuring payment of a restitution award. A probationary period should be as brief as possible under the facts of the case to help get a child on the right track, and not as

WORKMAN, Chief Justice, concurring:
(Filed Dec. 15, 1997)

I concur with the result reached by the majority. However, in addition to the direction provided by the majority for remand, I would emphasize that the most substantial problem in this case appears not to have even been addressed. These children committed an act of wanton vandalism indicating some deep-seated source of anger or psychological problem. An important tenet of our juvenile law has been to determine the underlying causation of the juvenile criminal conduct, with the goal of intervening and addressing the source of the problem.

Pursuant to West Virginia Code § 49-5-13(a) (1996), regarding granting probation to a juvenile, "[t]he court, upon its own motion, or upon request of counsel, may order a psychological examination of the child." Pursuant to § 49-5-13(b), "[f]ollowing the adjudication, the court shall conduct the dispositional proceeding, giving all parties an opportunity to be heard." The provision specifies as follows:

> In disposition the court shall not be limited to the relief sought in the petition and shall, in electing from the following alternatives, consider the best interests of the child and the welfare of the public:
>
> (1) Dismiss the petition;
>
> (2) Refer the child and the child's parent or custodian to a community agency for needed assistance and dismiss the petition;
>
> (3) Upon a finding that the child is in need of extra-parental supervision: (A) Place the child under the supervision of a probation officer of the court or of the court of the county where the child has his or her usual place of abode or other person

a long-term lien or debt collection method. Upon reconsideration of the restitution to be awarded, the circuit court should concurrently reconsider the probationary terms to assure that probation is not being used simply as a "Sword of Damocles" for an entire childhood to enforce a restitution award.

5. The appellants also argued that the circuit court erred in assessing restitution against the indigent mother. Because we have decided this matter on another issue, we will not address the parental liability issue.

while leaving the child in custody of his or her parent or custodian; and (B) prescribe a program of treatment or therapy or limit the child's activities under terms which are reasonable and within the child's ability to perform, including participation in the litter control program established pursuant to section twenty-five, article seven, chapter twenty of this code, or other appropriate programs of community service;

(4) Upon a finding that a parent or custodian is not willing or able to take custody of the child, that a child is not willing to reside in the custody of his parent or custodian, or that a parent or custodian cannot provide the necessary supervision and care of the child, the court may place the child in temporary foster care or temporarily commit the child to the state department or a child welfare agency. The court order shall state that continuation in the home is contrary to the best interest of the child and why; and whether or not the state department made a reasonable effort to prevent the placement or that the emergency situation made such efforts unreasonable or impossible. Whenever the court transfers custody of a youth to the department of human services, an appropriate order of financial support by the parents or guardians shall be entered in accordance with section five, article seven of this chapter and guidelines promulgated by the supreme court of appeals;

(5) Upon a finding that the best interests of the child or the welfare of the public require it, and upon an adjudication of delinquency pursuant to subdivision (1), section four, article one of this chapter, the court may commit the child to an industrial home, correctional institution for children, or other appropriate facility for the treatment, instruction and rehabilitation of juveniles: Provided, That the court maintains discretion to consider alternative sentencing arrangements. Commitments shall not exceed the maximum term for which an adult could have been sentenced for the same offense. The order shall state that continuation in the home is contrary to the best interests of the child and why; and whether or not the state department made a reasonable effort to prevent

the placement or that the emergency situation made such efforts unreasonable or impossible;

(6) Upon an adjudication of delinquency pursuant to subdivision (3) or (4), section four, article one of this chapter, and upon a finding that the child is so totally unmanageable, ungovernable and antisocial that the child is amenable to no treatment or restraint short of incarceration, commit the child to a rehabilitative facility devoted exclusively to the custody and rehabilitation of children adjudicated delinquent pursuant to said subdivision. Commitments shall not exceed the maximum period of one year with discretion as to discharge to rest with the director of the institution, who may release the child and return him or her to the court for further disposition. The order shall state that continuation in the home is contrary to the best interests of the child and why; and whether or not the state department made a reasonable effort to prevent the placement or that the emergency situation made such efforts unreasonable or impossible; or

(7) After a hearing conducted under the procedures set out in subsections (c) and (d), section four, article five, chapter twenty-seven of this code, commit the child to a mental health facility in accordance with the child's treatment plan; the director may release a child and return him to the court for further disposition. The order shall state that continuation in the home is contrary to the best interests of the child and why; and whether or not the state department made a reasonable effort to prevent the placement or that the emergency situation made such efforts unreasonable or impossible.

We explained in *State ex rel. West Virginia Dept. of Health and Human Resources v. Frazier,* 198 W.Va. 678, 482 S.E.2d 663 (1996), that "[g]eneral jurisdiction over juvenile proceedings is vested in the circuit courts pursuant to West Virginia Code § 49–5–2(a) (Supp.1996)" and "specific authority to render decisions regarding the disposition of juveniles is expressly granted to circuit courts by West Virginia Code § 49–5–13

(Supp.1996)." *Id.* at 682, 482 S.E.2d at 667. We also emphasized that "[t]he extent of a circuit court's discretion in placing juveniles is evidenced by the wide range of dispositional options available: community-based programs, rehabilitative facilities, correctional institutions, extra-parental supervision through probation officers, temporary shelter placement, or temporary placement with the DHHR." *Id.* at 683, 482 S.E.2d at 668.

In *State v. McDonald,* 173 W.Va. 263, 314 S.E.2d 854 (1984), we explained that "[t]he entire tenor of W.Va.Code, 49–5–13, is to provide substantial flexibility for sentencing of persons who committed offenses when they were juveniles." *See State v. Ball,* 175 W.Va. 652, 337 S.E.2d 310 (1985). "We have long recognized that the purpose of our juvenile law is to promote the rehabilitation of troubled children, rather than to punish them." *Id.*

The majority indicates that the record fails to disclose any particular program of treatment or therapy for these children. On remand, therefore, the lower court should endeavor to determine underlying problems causing these children to behave in the manner they did and address them through some program of counseling or rehabilitation. Otherwise, we will in all likelihood be dealing with these children as adult criminals when they reach their majority.