PEOPLE v GALLAGHER

1. SEARCHES AND SEIZURES—SEARCH WITHOUT WARRANT—CONSENT.

A search of a defendant's premises, made without a warrant, is proper where the defendant voluntarily has consented to the search; the people are not required to show that a defendant knew or was told that he did not have to consent to a search.

2. SEARCHES AND SEIZURES—SEARCH WITHOUT WARRANT—CONSENT—SEARCH AFTER ARREST.

A limited search made without a warrant after a defendant had been placed under arrest, which consisted mainly of photographing and examining evidence already seen, was proper where an initial search of the defendant's premises, voluntarily consented to by the defendant, uncovered evidence which provided probable cause to arrest him and to seize that evidence.

3. CRIMINAL LAW—STATUTES—PROBATION—RESTITUTION—JUDICIAL DISCRETION—STATUTES.

Payment of restitution as a condition of probation is authorized by statute, and the amount and manner of payment is a matter for the judgment of the sentencing judge (MCLA 771.3).

4. CRIMINAL LAW—PROBATION—RESTITUTION—CONSTITUTIONAL LAW—JUDICIAL DISCRETION—STATUTES.

A requirement that a defendant pay restitution as a condition of probation in the amount of the value of a stolen car, the cowl section of which was found in the defendant's collision shop, although the cowl section's value was less than that of the entire car, is not in violation of the probation statute nor of any constitutional right of the defendant, and is not an abuse of the judge's discretion (MCLA 771.3).

Appeal from Wayne, John R. Kirwan, J. Submitted Division 1 June 10, 1974, at Detroit. (Docket

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 5 Am Jur 2d, Arrest §§ 26, 28.
[3, 4] 21 Am Jur 2d, Criminal Law § 565.

No. 17188.) Decided September 25, 1974. Leave to appeal denied, 393 Mich —.

Raymond Gallagher was convicted of receiving stolen property over the value of $100. Defendant appeals. Affirmed and remanded for execution of sentence.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*Towner, Rosin, York & McNamara,* for defendant.

Before: J. H. GILLIS, P. J., and ALLEN and ELLIOTT,* JJ.

ELLIOTT, J. Defendant owns and operates an auto-collision repair shop in Lincoln Park, Michigan. He would buy, fix and sell wrecked cars as a part of that business.

On September 30, 1971, a doctor's 1971 green Cadillac sedan was stolen from a hospital parking lot in Lincoln Park. The next day a Lincoln Park detective got an anonymous telephone tip that two stolen Cadillacs were at defendant's shop. He notified the lieutenant and together they went to investigate. The lieutenant was formerly defendant's brother-in-law, but their relationship remained cordial.

The detective and the lieutenant entered defendant's shop about three o'clock by way of one of the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

large, open, overhead doors. Other persons were present. Defendant greeted them and they told him about the telephone report that he had two stolen cars. They asked: "Do you mind if we look around?" He replied that he did not mind.

They saw a 1971 Cadillac cowl without a vehicle identification plate. The "cowl" is the front windshield, distributor, steering wheel, dashboard, foot pedals and firewall. It had been cut from a chassis with a torch and painted yellow, but the original green was not fully covered. It was in excellent condition and had only 3392 miles on the odometer. The police asked defendant where the cowl came from and where the plate for it was. Defendant said it came from a yellow Cadillac convertible chassis nearby and went to the office for the plate. The chassis he indicated was rusting and fire-damaged with very worn tires. Its cowl had been cut off by a saw. The plate produced by defendant was inconsistent with the cowl observed, so the detective telephoned the National Auto Theft Bureau for information and an agent said he would come to the shop. A police photographer was also called.

At this point, defendant was told that he was under arrest. He was not handcuffed. He remained at his shop and was cooperative. He drank a beer provided by one of his friends while they waited for the Bureau's agent and to lock up the shop. Soon after defendant was advised of his arrest, a policeman found an identification plate for the cowl under a rag. The photographer came and took pictures of the cowl and of the chassis which were too big and heavy to remove without special equipment. The Theft Bureau agent found that the plate, discovered under a rag, identified the cowl as belonging to the green hardtop Cadillac stolen on the previous day. He also learned that the plate

produced by defendant actually came from the yellow Cadillac convertible.

On the way to jail, defendant was permitted to stop at his home and obtain his title to the yellow convertible. He was released on bail two hours later. The next morning, the mileage on the cowl's odometer had been raised to more than 10,000 by the time police arrived with a search warrant at defendant's shop to remove the cowl.

The jury must have disbelieved defendant's efforts to prove that he had purchased the cowl from a parts dealer near Chicago. Defendant was convicted of receiving stolen property, over $100, MCLA 750.535; MSA 28.803.

He was placed on five years probation with five months jail-time and with a condition requiring him to pay restitution of $6,277.84, which is what an insurer had paid for the car theft loss. There was testimony that the cowl was worth $400 to $1,500.

We have considered the totality of the circumstances, and we hold that the search was with voluntary consent of the defendant. There is no requirement that the people prove that defendant knew or was told that he did not have to consent. *Schneckloth v Bustamonte,* 412 US 218; 93 S Ct 2041; 36 L Ed 2d 854 (1973). His consent was not coerced, although probably given in the hope that suspicions would be allayed by an unproductive search. *Schneckloth, supra,* reserved the question of whether a defendant must be informed of the right to refuse consent if he is arrested. It was held in *United States v Heimforth,* 493 F2d 970 (CA 9, 1974), *cert den,* 416 US 908; 94 S Ct 1615; 40 L Ed 2d 113 (1974), that a search is valid if consent is voluntarily given after an arrest. In the case at hand, defendant voluntarily consented to the

search before his arrest. The search uncovered evidence which provided probable cause to arrest him and to seize the cowl and chassis. We think the limited search that followed his arrest continued to be valid by reason of the consent that he could have revoked but did not revoke.

If the police had waited until they had finished the search before arresting defendant there would be no problem. If a voluntary consent search must be terminated by the police as soon as they arrest the defendant, that will discourage prompt arrest. We see no purpose in that. Defense counsel argues that when defendant was arrested the search had to stop, the shop be placed under guard, and a warrant obtained. Such an effort is not required of police in these circumstances. The police remained after arrest mainly to photograph and examine evidence already seen. They did not search defendant's office or any area that he had not consented to be searched.

The search warrant obtained on the next day would not validate a prior illegal search, but the earlier search was not illegal. No evidence seized under the warrant was presented at the trial, so we need not consider the sufficiency of the affidavit.

## *RESTITUTION*

Defendant was convicted of receiving the cowl worth at most $1,500 from a stolen car worth at least $6,277.84. He was required to make restitution of $6,277.84. He claims the judge could not do that and cites *People v Becker,* 349 Mich 476, 486; 84 NW2d 833 (1957), to wit:

"[E]ven where imposition of the restitution requirement is held to be proper under the circumstances of

the particular case before the court, it can be imposed only as to loss caused by the very offense for which defendant was tried and convicted."

In *Becker,* four of the eight justices concurred only in the result and the language relied on by defendant was unnecessary. Mr. Becker, an uninsured teen, denied fault, and only admitted illegally leaving the accident scene. If what he said was true, he would not owe the money he was required to pay. That case is very different from ours.

In *People v Nawrocki,* 8 Mich App 225; 154 NW2d 45 (1967), defendant was convicted of uttering and publishing a specific forged check. He was ordered to pay for other forged checks he had passed, as well. The Court of Appeals said our statute authorized such restitution. We agree.

The statute reads in pertinent part:

"The court may impose such other lawful conditions of probation, including restitution in whole or in part to the person or persons injured or defrauded, as the circumstances of the case may require or warrant, or as in its judgment may be meet and proper." MCLA 771.3; MSA 28.1133.

Michigan, therefore, did not choose to follow the Federal approach; see 18 USC 3651 and *United States v Hoffman,* 415 F2d 14 (CA 7, 1969). Statutes similar to ours in other states have been held to permit restitution of the whole loss caused by a course of criminal conduct upon conviction of a crime arising out of that conduct. *People v Dawes,* 132 Ill App 2d 435; 270 NE2d 214 (1971), *aff'd* 52 Ill 2d 121; 284 NE2d 629 (1972), upheld an order for restitution not only to the original complainants against a realtor who pled guilty to obtaining money by means of a confidence game, but also to

those subsequently discovered. *State v Foltz,* 14 Or App 582, 585; 513 P2d 1208, 1210 (1973), held:

"[T]he fact that defendant's conviction is for an attempt to commit theft would not preclude the court from conditioning probation upon restitution of the amount actually taken, even though a larger amount."

Every trial judge accepts plea-agreement convictions to lesser offenses, often "attempts", and hears defendants admit the greater or completed criminal conduct. Crime should not be profitable. An attempt connotes no loss. If a judge cannot require restitution of a loss he knows has occurred, he may decide against probation.

*People v Miller,* 256 Cal App 2d 348, 356; 64 Cal Rptr 20, 25 (1967), supports our conclusion and said in part:

"Probation is granted in hope of rehabilitating the defendant and must be conditioned on the realities of the situation, without all of the technical limitations determining the scope of the offense of which defendant was convicted."

Nevertheless, restitution and the procedure to determine it should be fair. The amount of restitution or reparation should be reasonable. See ABA Standards for the Administration of Criminal Justice, Probation, § 3.2(b), and Model Penal Code, §§ 301.1 and 301.2; 24 CJS, Criminal Law, § 1571(8), p 475. In Vermont a statute similar to ours adds that the restitution or reparation "shall not exceed an amount the defendant can or will be able to pay". See *State v Benoit,* 131 Vt 631, 635; 313 A2d 387 (1973), which involved restitution of the full amount of welfare fraud. In deciding what is reasonable, the court should be optimistic that probation and the defendant will both work.

If restitution ordered is not paid because the defendant has been unable to pay it, he should not have probation revoked or be imprisoned. The principle involved is the same as that involved in imprisonment for failure to pay a fine that cannot be paid. See *People v Kay,* 36 Cal App 3d 759; 111 Cal Rptr 894 (1973); *Tate v Short,* 401 US 395; 91 S Ct 668; 28 L Ed 2d 130 (1971).

It seems desirable to have the defendant and his lawyer participate in the restitution decision. The matter might be discussed at the time of a plea of guilty. The recommended amount of restitution or reparation and the manner of its payment should be included in the presentence report and disclosed. The court might tell the defendant at the time of conviction that if probation is granted, restitution may be required, and suggest that he and his lawyer propose a plan for restitution to the presentence investigator. In any event, the court could invite comment from defendant about the restitution the court is considering before it is imposed as a part of the sentence.

The amount and manner of payment of reasonable restitution is a matter for the judgment of the sentencing judge, as to him "may be meet and proper".

"The legislatively announced state policy with respect to probation is that it is a matter of grace. MCLA 771.4; MSA 28.1134. The statutory authority of a sentencing judge granting probation is broad, as is his authority to alter and amend the probationary order. MCLA 771.1, 771.2, 771.3; MSA 28.1131, 28.1132, 28.1133. Probation is peculiarly within the province of the sentencing judge, and an appellate court should not interfere in probation matters absent a showing of a violation or abuse of statutory authority or violation of some constitutional right of the defendant." *People v Sattler,* 20 Mich App 665, 669–670; 174 NW2d 605, 607 (1969).

The justice of restitution is deeply rooted in human nature and history. Proverbs, 6:30–31; 4 Blackstone, Commentaries, pp 429–430. Compensation of victims of crime has been enacted in England and is popularly advocated here. Who better to compensate the victims to the extent he or they can do so than the criminal or criminals causing the harm?

The trial judge's requirement that defendant pay the value of the stolen car from which the cowl was found in his collision shop is not in violation of the probation statute nor is it a violation of any constitutional right of the defendant. We do not find it to be an abuse of the judge's discretion.

Conviction affirmed. Remanded for execution of the sentence imposed.

All concurred.