LEWIS COTTRELL

*v.*

PUBLIC FINANCE CORPORATION

(No. 14268)

Decided July 3, 1979.

*Daniel F. Hedges* for plaintiff.

*Charles E. McCarty* for defendant.

McGRAW, JUSTICE:

This is an appeal from a final judgment of the Circuit Court of Roane County. Lewis Cottrell appeals from the court's dismissal of his petition for reduction of a garnishment. W. Va. Code § 46A-2-130(3) [1974].[1] The case presents several questions. Do the Rules of Civil Procedure apply to these type proceedings? Was the answer of Public Finance Corporation, the respondent below, timely filed; and did the trial court properly rule on Cottrell's objection to the answer's timeliness? Was the trial court correct when it concluded this was not a case of

---

[1]W. Va. Code § 46A-2-130(3) states:

No court may make, execute or enforce an order or process in violation of this section. Any time after a consumer's earnings have been executed upon pursuant to article five-A [§ 38-5A-1 et seq.] or article five-B [§ 38-5B-1 et seq.] chapter thirty-eight of this Code by a creditor resulting from a consumer credit sale or consumer loan, such consumer may petition any court having jurisdiction of such matter or the circuit court of the county wherein he resides to reduce or temporarily or permanently remove such execution upon his earnings on the grounds that such execution causes or will cause undue hardship to him or his family. When such fact is proved to the satisfaction of such court, it may reduce or temporarily or permanently remove such execution.

undue hardship? Based on our answers to these questions, we reverse the judgment below and remand the case for further proceedings.

In magistrate court, Public Finance Corporation recovered a $1,099.62 judgment against Lewis Cottrell. The transaction underlying the judgment was a consumer loan. Cottrell's wages were subjected to garnishment. *See* W. Va. Code § 38-5A-1 *et seq.*

On July 26, 1978, Cottrell filed a petition naming Public Finance as respondent. The petition sought to have a garnishment on Cottrell's wages "temporarily or permanently removed."[2] The petition alleged: the garnishment caused Cottrell and his family undue hardship; his obligations far exceeded the amount of his net monthly income; and his financial difficulties had caused him continuing psychological problems. The petition was served on the Secretary of State as statutory agent for Public Finance. On the day the petition was filed, the court, acting *ex parte*, found the allegations made a *prima facie* case, and abated the garnishment pending a hearing. A hearing was set for September 11th[3] to give Public

---

[2]For persons faced with situations similar to Cottrell's, bankruptcy is often an available alternative. Foregoing bankruptcy in favor of the limited relief offered by reduction of garnishment is a responsible course of action, less disruptive of the affairs of commerce and, as a matter of public policy is the favored alternative.

[3]The record indicates the hearing was held approximately 46 days after the court's initial order temporarily terminating the garnishment. The relationship of this procedure to due process merits consideration. The right of a creditor to collect a garnishment is "a significant property interest" protected by the due process clause of the Fourteenth Amendment of the United States Constitution. *See, Fuentes v. Shevin,* 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed.2d 556 (1972). Such property interests are also accorded protection under Art. 3 § 10 of the West Virginia Constitution. *State ex rel. McLendon v. Morton,* ____ W. Va. ____, 249 S.E.2d 919 (1978); *Waite v. Civil Service Commission,* ____ W. Va. ____, 241 S.E.2d 164 (1977); *North v. West Virginia Board of Regents,* ____ W. Va. ____,

Finance the opportunity to show cause, if any, why the garnishment was not an undue hardship, and why it should not be temporarily or permanently terminated.

In an answer filed at the hearing, Public Finance prayed for dismissal of the petition and abatement of the initial order temporarily removing the garnishment. After the hearing the court granted Public Finance's prayer and dismissed Cottrell's case. The court made no findings of fact. R.C.P. 52.

On September 19, 1978, this Court granted a writ of error, and upon its own motion granted leave for the petitioner to move to reverse.

The first issue raised concerns the timeliness of Public Finance's answer. Cottrell asserts the trial court erred by dismissing his petition over the objection that Public Finance failed to file an answer within the prescribed time. When the answer was filed at the September 11th hearing the 30 day period in which to file an answer had expired. *See*, R.C.P. 12(a).

In the lower court, Public Finance contended the rules did not apply to the proceedings. In presenting their case to this Court, they concede the rules apply, but assert the trial judge extended the time to answer by setting the hearing for a date subsequent to the expiration of the prescribed time. They contend this action

---

233 S.E.2d 411 (1977). While the termination of a garnishment is not a physical seizure, it is, nonetheless, a deprivation of a property interest; and even though the deprivation is *temporary*, it is still a deprivation for due process purposes. *Fuentes, supra*, at 85; *State ex rel. Payne v. Walden*, ⎯⎯ W. Va. ⎯⎯, 190 S.E.2d 770 (1972). While there are circumstances that allow such deprivations without a prior hearing, we cannot, based on the record in this case, say whether these cirucumstances are present here. Moreover, we note that this Court in *Anderson v. George*, ⎯⎯ W. Va. ⎯⎯, 233 S.E.2d 407 (1977), held such a hearing may be held before or after the seizure depending on the circumstances; as mere postponement of judicial inquiry is not a denial of due process in every situation.

constituted a R.C.P. 6(b)(1)[4] extension of the time to answer.

The first question to be answered is whether the rules apply to these type proceedings. The statute offers no guidance on this point, however, the situation is not unique. There are numerous statutorily created proceedings, and the Rules apply to most of them without limitation or qualification. *See,* R.C.P. 1; M. Lugar and L. Silverstein, *West Virginia Rules* (1960) (particularly commentary accompanying Rule 1). Extraordinary remedies and proceedings that are wholly *ex parte* are not subject to a full application of the rules. *See,* R.C.P. 81. A comparison of the instant proceeding to other statutory proceedings leads to the conclusion that W. Va. Code § 46A-2-130(3) falls into that class of proceedings to which the Rules apply. For example, W. Va. Code § 38-9-4 is a statutory proceeding to which the Rules apply. This statute creates an equitable remedy for a creditor who claims a debtor has overvalued a homestead exemption. The statute simply directs the creditor to file a bill in equity and indicates that if the court is satisfied with the proof it shall make the necessary order. The provision in the instant case allows a consumer to petition a court to reduce a garnishment; and it provides that if undue hardship is proved to the court's satisfaction, the court may reduce or terminate the garnishment. These two statutes are similar in regard to the nature of the minimal procedure set forth and in regard to the absence of any other statutory direction on the procedure to be followed.

---

[4]R.C.P. 6(b)(1):

When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, by written stipulation filed with the court, all the parties concerned may agree at any time to a different period, or the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order. ...

We find: proceedings under W. Va. Code § 46A-2-130(3) are "other judicial proceedings" as the term is used in R.C.P.1;[5] these proceedings possess none of the characteristics which limit the Rules's application; and in fact these proceedings are comparable to others to which the Rules apply without limitation; e.g. W. Va. Code § 38-9-4. Accordingly, we hold the rules apply to proceedings instituted under W. Va. Code § 46A-2-130(3).[6]

We next address the question of whether the Court correctly ruled on Cottrell's objection to the answer's timeliness.* We hold the trial court erred in dismissing the petition without properly resolving the issue of Cottrell's objection to the answer's timeliness. Therefore we reverse the trial court's judgment dismissing the petition, and we remand the case.

The remaining issue arises from Cottrell's complaint that the trial court rules contrary to the clear weight of the evidence and abused its discretion by concluding he failed to prove a case of undue hardship. The pertinent portion of the statute indicates: "When such fact [undue hardship] is proved to the satisfaction of such court it may reduce or temporarily or permanently remove such execution." This language vests broad discretion in the

[5]R.C.P. 1 provides:

"These rules govern the procedure in all trial courts of record in all actions, suits, or other judicial proceedings of a civil nature whether cognizable as cases at law or equity, with the qualifications and exceptions stated in Rule 81. ..."

[6]The procedure followed below was in some respects consistent with the rules; in other respects it appears to have been a hybrid proceeding. The commentary to R.C.P. 1 adequately explains the manner in which the rules affect the procedure, form and terminology of existing statutory proceedings.

*The writer concurs in the holding of this paragraph and would have included at this point the following sentence from the original opinion which the majority deleted.

"The record discloses no timely request for an extension; no showing of good cause; no order reciting either matter was done; and no order specifically extending the time to answer."

The reasoning of the majority is added in that part of the first sentence preceding the comma in the last paragraph, *infra.*

trial court. On review this Court will not interfere unless an abuse of discretion is obvious and clearly appears on the record. Normally we would review the evidence and the trial court's findings to determine if there was an abuse of discretion. Here, because of the absence of findings of fact, we decline to undertake such a review. But, realizing this reduction of garnishment provision should be applied in a constitutionally correct and uniform manner to produce reasonably consistent results which can be properly reviewed, and realizing this requires a common understanding of the concepts involved, we offer some brief observations on these matters.

Our research indicates the particular provisions on garnishment reduction are unique.[7] The legislative history of the section provides little if any enlightenment regarding the concept of undue hardship, and this Court has not previously considered the matter.

Underlying this provision is the concept that after the deduction of the garnishment from a person's wages enough money should remain to meet ordinary and necessary expenses with something left over for unforeseen expenses and some discretionary spending. The garnishment of a debtor's non-exempt income should not make it impossible for the debtor to provide for the family.[8] A debtor should not be restricted to all but the barest necessities, and a garnishment should not place any person in the position of having no money for discretionary spending for to do so is to risk the destruction of incen-

---

[7]Cardi, "The W. Va. Consumer Credit and Protection Act," 77 W. Va. L. Rev. 401, 495–96 (1974–75).

[8]"Consumer Credit in the United States" Report of the National Commission on Consumer Finance 33 (1972). *Cf., State v. Allen,* 48 W. Va. 154, 35 S.E. 990 (1900), where the court in dealing with the purposes underlying the poor debtor's exemption currently embodied in W. Va. Code § 38-8-1 (Cum. Supp. 1978) stated that the object of the exemption was "... for the protection and benefit of a poor debtor and his helpless family, to give them the bread of life and a pillow whereon to lay their head, to save them from destruction and absolute want." *Id.* at 162–63, 35 S.E.

tive; a result beneficial to no one. While these concepts can be rather simply stated several questions are raised by their application to a variety of factual situations.

In order to apply this provision it is necessary for circuit courts to determine which of a debtor's expenses are ordinary and necessary; the ultimate object being to ascertain how much of a debtor's net income remains after subtracting all ordinary and necessary expenses and some others. Policies related to the prudent utilization of credit, fairness to creditors in particular and to society in general, dictate that the burden of proof for reduction of a garnishment should be difficult to meet if the debtor continues to make expenditures for any purpose. There must be limits on the types of expenses that can be considered ordinary and necessary. In large measure, what is ordinary and necessary depends on facts peculiar to each debtor's situation. It is neither feasible nor desirable for this court to attempt to make a complete list of ordinary and necessary expenses. However, courts in other areas of the law have determined that expenditures for certain purposes should be given due consideration as ordinary and necessary expenses.[9]

Expenses for the family's clothing, education or recreation, dwelling, medical care, transportation and food should be given foremost consideration. 24 Am. Jur.2d *Divorce and Separation* § 554 (1963); Annot. 1 A.L.R.2d 280 § 9[a] (1965). In appropriate situations expenses for tools for the debtor's trade or occupation would be considered an ordinary and necessary expense.

There are other expenses which are not ordinary but may be necessary. These expenses should be considered in appropriate cases. Such items are expenses pursuant to other court orders, e.g., child support or alimony; or

[9]In the field of domestic relations courts frequently have reason to determine a party's ordinary and necessary expenses, e.g., in making awards of alimony and support. The endeavor is similar to that which is required in reduction of garnishment cases. The Am. Jur. sections and the A.L.R. annotation cited, *infra.*

expenses for the support of other persons the debtor is legally or morally obligated to assist, such as children of a former marriage, a former wife, parents or other relatives.[10]

Just as policy considerations result in limits on the type of expenses that are ordinary and necessary, they also recommend reasonable limits on the amounts of expenses. Considering the present rate of inflation and its probable indefinite continuance, we do not attempt to define reasonable in terms of dollars. In a short time any dollar amounts could be meaningless. Trial courts should evaluate the reasonableness of obligations and expenses by comparison to similar families in the same locality and shopping area. Reasonableness should be determined mostly on comparable experience, but adjustment should be made for extraordinary or peculiar circumstances.

Expenses will commonly take several forms, *inter alia:* monthly or other regular periodic payments made pursuant to some contractual obligation such as a loan, credit card or charge account, or pursuant to some court order; payments made to meet current expenses; payments made to amortize or pay off existing debts not represented by some contractual obligation calling for interest and payments in installments. All of these forms should recieve consideration.

Courts should also consider the relationship between the debtor's total assets and his liabilities.[11]

---

[10]24 Am. Jur.2d *Divorce and Separation* § 554 (1963) and cases cited therein; Annot., 1 A.L.R.3d 280 § 9[d] (1965) and cases cited therein.

[11]In the domestic relations field it is a settled principle that the liabilities and assets other than income of the parties are factors to be considered in determining the amount of an alimony or support award. W. Va. Code § 48-2-16; 24 Am. Jur.2d, *supra*, § 556; Annot., *supra*, § 12.

As the foregoing discussion indicates, these proceedings require particularity in pleading and proof.[12] Once reasonable amounts for all ordinary and necessary expenditures have been determined, these amounts plus the garnishment and the amounts of other allowable expenditures should be subtracted from the debtor's net income. The remaining sum should be sufficient to allow for necessary but unforeseeable expenses, e.g., accident or illness, and for some discretionary spending; if it is insufficient for these purposes undue hardship exists.

The questions presented herein are issues of first impression for us and since the Court lacked appropriate guidelines regarding the applicability of the rules of Civil Procedure, Cottrell should be allowed to file an amended petition to attempt to conform his allegations and proof to requirements that are consistent with these views. Public Finance can then file a timely answer to the amended petition. The trial court will then have an opportunity to consider the case in light of this opinion.

*Reversed and remanded.*

---

[12]These type proceedings will invariably involve the proof of numerous individual expenditures and debts and the reasonableness of their amounts. The court and parties should be alert and open to the possibility of using pre-hearing conferences and stipulations to avoid uselessly lengthy proceedings.

Pre-hearing conferences could also be utilized to explore the possibility of settlements which would allow the debtor the opportunity to propose a plan by which most obligations could be met, albeit at a reduced level. Debtors with a record of diligent payment should be particularly good candidates for such a plan. We note in this regard the record shows that excepting this judgment, Cottrell has a history of satisfying his obligations. In fact his record for repayment on other loans was described by a Public Finance employee as "unbelievably good."

On the other hand, trial courts and parties should recognize causes where the debtor has an obvious history of imprudent credit utilization and poor financial management, and explore the possibilities of seeking professional guidance with regard to financial planning and credit utilization. Bad financial habits and imprudent credit utilization do not benefit the creditor, the debtor or society.