347 S.E.2d 197

**Timothy Eugene FOX**

v.

**STATE of West Virginia.**

**No. 16872.**

Supreme Court of Appeals of
West Virginia.

June 4, 1986.
Dissenting Opinion July 3, 1986.
Concurring Opinion July 16, 1986.

Edward L. Bullman, Moundsville, for appellant.

Atty. Gen. Charlie Brown, Asst. Atty. Gen. Jennifer Costello, Charleston, for appellee.

McGRAW, Justice:

This is an original proceeding in habeas corpus. The petitioner, Timothy Eugene Fox, seeks to have set aside a final order of the Circuit Court of Marshall County, entered October 19, 1984, which revoked his probation and sentenced him to imprisonment in the state penitentiary. We conclude that the circuit court abused its discretion in revoking the petitioner's probation, and we award the writ.

On July 5, 1983, the petitioner pled guilty in the Circuit Court of Marshall County to an information charging him with two counts of breaking and entering and one count of forgery. After a presentence investigation, the circuit court denied the petitioner's motion for probation and ordered him committed as a youthful offender to the Anthony Center for not less than six months nor more than two years, during which time the petitioner was required to participate in an alcohol and drug rehabilitation program.

On April 12, 1984, after successfully completing the rehabilitation program, the petitioner was returned to the circuit court for further disposition. Following a brief hearing, the petitioner was placed on probation for one year on condition that he pay restitution in the amount of $986.03. Other conditions of probation, contained in a written statement signed by the petitioner, required him to repay the State $466.25 for the costs of the proceedings against him and to refrain from drinking alcoholic beverages for the term of probation.[1] The probation officer, Terry Huffman, instructed the petitioner to make monthly payments of "slightly over a hundred dollars" in order to pay the total amount of restitution and court costs by the end of the probation term.

With the permission of the court, the petitioner subsequently moved to Gallipolis, Ohio to live with his sister and brother-in-law and began working in a restaurant. In June, 1984, the petitioner was transferred to the supervision of the Gallia County, Ohio probation office.

In September, 1984, Huffman filed with the Circuit Court of Marshall County a petition to revoke probation on the grounds that the petitioner had violated the conditions of probation stated above.[2] The petitioner was arrested and returned to Marshall County, where a hearing was conducted before the circuit court on October 12, 1984. At the conclusion of the hearing the circuit court found the petitioner guilty of having violated his probation. By order entered October 19, 1984, probation was revoked, and the petitioner was sentenced to imprisonment at the state penitentiary for three consecutive terms of not less than one nor more than ten years.

The petitioner's first contention in this proceeding is that the circuit court's revocation of probation for his failure to pay court costs and restitution was unlawful. We conclude that the circuit court acted in excess of its authority in imposing these conditions of probation and, therefore, had no authority to revoke the petitioner's probation for his failure to comply with them.

The circuit court's authority to order restitution or repayment of court costs as a condition of probation is derived from W.Va.Code § 62-12-9 (1984 Replacement Vol.), which provides, in part, that in addition to the enumerated mandatory conditions for release on probation,

> 11) I shall pay all restitution heretofore ordered by the Court during the term of my probation, as my supervising Probation Officer may direct.

---

1. The written statement of the conditions of probation provided, in pertinent part:

    7) I shall not drink any alcoholic beverages during my probation term.

    \* \* \* \* \* \*

    10) I shall pay the costs of this proceeding, inclusive of any attorney's fees herein paid in my behalf by the State of West Virginia, during the term of my probation, as my supervising Probation Officer may direct.

2. The revocation petition also alleged that the petitioner had violated his probation by failing to attend counseling sessions. This charge was subsequently dismissed.

the court may impose, subject to modification at any time, any other conditions which it may deem advisable, including, but not limited to, any of the following:

(1) *That he shall make restitution or reparation, in whole or in part, immediately or within the period of probation, to any party injured by the crime for which he has been convicted.*

(2) *That he shall pay any fine assessed and the costs of the proceeding in such installments as the court may direct.*

(3) That he shall make contribution from his earnings, in such sums as the court may direct, for the support of his dependents. (Emphasis added)

In addition, W.Va.Code § 29–21–17(d) (1985 Cum. Supp.) authorizes the court to condition probation upon repayment of the costs of representation provided the defendant under our public defender law.[3]

■ In *Armstead v. Dale*, 170 W.Va. 319, 294 S.E.2d 122, 125 (1982), we concluded that these provisions were permissible under constitutional principles of equal protection and availability of legal counsel. *Fuller v. Oregon*, 417 U.S. 40, 94 S.Ct.

2116, 40 L.Ed.2d 642 (1974). We also recognized, however, that since the imposition of financial sanctions as a condition of probation is a matter within the discretion of the lower court, such condition must be reasonable. *See Jett v. Leverette*, 162 W.Va. 140, 247 S.E.2d 469 (1978); *Louk v. Haynes*, 159 W.Va. 482, 223 S.E.2d 780 (1976). In *Armstead*, we concluded that "[a] repayment condition is unreasonable if it is beyond probationer's ability to pay without causing undue hardship to himself or his family."[4] A similar rule obtains when probation is conditioned upon payment of restitution. *See State v. M.D.J.*, 169 W.Va. 568, 289 S.E.2d 191 (1982). Unreasonableness is unacceptable.

■ In the case before us, however, there is nothing in the record to indicate that the circuit court inquired into or considered the petitioner's ability to pay without undue hardship prior to the imposition of the repayment conditions. Such an inquiry is statutorily required before the court may condition probation on reimbursement of the costs of services rendered a defendant under our public defender law. W.Va.Code § 29–21–17(d)(2) provides:

**3.** W.Va.Code § 29–21–17(d) provides:

In the circumstances and manner set forth below, circuit judges may order repayment to the State of the costs of representation provided under this article:

(1) In every case in which services are provided to an indigent person and an adverse judgment has been rendered against such person, the court may require that person to pay as costs the compensation of appointed counsel, the expenses of the defense and such other fees and costs a authorized by statute.

(2) The court shall not order a person to pay costs unless the person is able to pay without undue hardship. In determining the amount and method of repayment of costs, the court shall take account of the financial resources of the person, the person's ability to pay and the nature of the burden that payment of costs will impose. The fact that the court initially determines, at the time of a case's conclusion, that it is not proper to order the repayment of costs does not preclude the court from subsequently ordering repayment should the person's financial circumstances change.

(3) When a person is sentenced to repay costs, the court may order payment to be made forthwith or within a specified period of time or in specified installments. If a

person is sentenced to a term of imprisonment, an order for repayment of costs is not enforceable during the period of imprisonment unless the court expressly finds, at the time of sentencing, that the person has sufficient assets to pay the amounts ordered to be paid or finds there is a reasonable likelihood the person will acquire the necessary assets in the foreseeable future.

(4) A person who has been sentenced to repay costs, and who is not in contumacious default in the payment thereof, may at any time petition the sentencing court for modification of the repayment order. If it appears to the satisfaction of the court that continued payment of the amount ordered will impose undue hardship on the person or the person's immediate family the court may modify the method or amount of payment.

(5) When a person sentenced to pay costs is also placed on probation or imposition or execution of sentence is suspended, the court may make the repayment of costs a condition of probation or suspension of sentence.

**4.** In *Armstead v. Dale, supra,* we referred to *Cottrell v. Public Finance Corp.*, 163 W.Va. 310, 256 S.E.2d 575 (1979) for an explanation of "undue hardship".

The court shall not order a person to pay costs unless the person is able to pay without undue hardship. In determining the amount and method of repayment of costs, the court shall take account of the financial resources of the person, the person's ability to pay and the nature of the burden that payment of costs will impose. The fact that the court initially determines, at the time of a case's conclusion, that it is not proper to order the repayment of costs does not preclude the court from subsequently ordering repayment should the person's financial circumstances change.

Clearly, unless the circuit court conducts a prior inquiry into and determines the probationer's ability to pay, it has no authority to condition probation upon the repayment of the costs of representation under W.Va. Code § 29–21–17(d).

There is no similar statutory provision expressly requiring the court to inquire into the defendant's ability to pay before ordering restitution as a condition of probation. After reviewing the statements of other jurisdictions, however, we believe a pre-imposition inquiry is required even in the absence of statute.

First, "[c]onsideration of the defendant's ability to pay restitution is sound penology." *State v. Hawkins*, 134 Ariz. 403, 405, 656 P.2d 1264, 1266 (1982). The practice of ordering restitution or reparation[5] as a condition of probation is favored in the law because it serves "as an aid both to the criminal in achieving rehabilitation and to his victim in obtaining some measure of redress." *Commonwealth v. Walton*, 483 Pa. 588, 599, 397 A.2d 1179, 1185 (1979). *See also People v. Walmsley*, 168 Cal. App.3d 636, 214 Cal.Rptr. 170 (1985); *State v. Blanchard*, 409 A.2d 229 (Me.1979).

Unlike a fine as a condition of probation, or service of a jail term prior to supervision, restitution has an understandable logic. It is directly related to the offense and the attitude of the offender. There is a reality involved: society does not sanction fraud or other forms of theft; it does not approve injury inflicted upon an innocent person. Society wants to make sure the offender realizes the enormity of his conduct, and it asks him to demonstrate this by making amends to the individual most affected by the defendant's depredations. *State v. Harris*, 70 N.J. 586, 593, 362 A.2d 32, 35 (1975), *quoting* D. Dressler, *Practice and Theory of Probation and Parole* 176–177 (1959).

Restitution can aid an offender's rehabilitation by strengthening the individual's sense of responsibility. The probationer may learn to consider more carefully the consequences of his or her actions. One who successfully makes restitution should have a positive sense of having earned a fresh start and will have tangible evidence of his or her capacity to alter old behavior patterns and lead a law-abiding life. Conditioning probation on making restitution also protects the community's interest in having the victims of crime made whole. *Huggett v. State*, 83 Wis.2d 790, 798, 266 N.W.2d 403, 407 (1978). Thus, "[r]estitution imposed in a proper case and in an appropriate manner may serve the salutary purpose of making a criminal understand that he has harmed not merely society in the abstract but also individual human beings, and that he has a responsibility to make them whole." *People v. Richards*, 17 Cal.3d 614, 620, 131 Cal.Rptr. 537, 540–541, 552 P.2d 97, 100–101 (1976).

Where, however, the defendant is unable to pay restitution, the rehabilitative purpose of the probation condition is destroyed.

---

**5.** It should be noted that, technically, the term "restitution" ordinarily refers to compensation required for wrongful appropriation of money or property, while "reparation" refers to compensation required to be paid to the victim of physical injury resulting from a crime. *See Commonwealth v. Walton*, 483 Pa. 588, 595, 397 A.2d 1179, 1183 (1979), footnote 10. Generally, however, courts do not make this distinction and use the terms interchangeably. *See People v. Pettit*, 88 Mich.App. 203, 276 N.W.2d 878 (1978); *In re D.G.W.*, 70 N.J. 488, 361 A.2d 513 (1976); *Commonwealth v. Fugua*, 267 Pa.Super 504, 407 A.2d 24 (1979). *See also* Annot., 73 A.L.R.3d 1240 § 1 (1976).

If the amount of restitution imposed exceeds the defendant's ability to pay, the rehabilitative purpose of the order is disserved, especially where the restitution payment is a condition of probation, for in such a case the defendant is told that he will not be imprisoned only if he somehow satisfies a condition he cannot hope to satisfy.

*Commonwealth v. Fuqua,* 267 Pa.Super 504, 509, 407 A.2d 24, 26. *See also State v. Hawkins, supra; People v. Kay,* 36 Cal. App.3d 759, 111 Cal.Rptr. 894 (1973); *Huggett v. State, supra.* We recognized as much in *State v. M.D.J., supra,* where we stated:

An order imposing conditions of probation that are unreasonable or beyond the ability of the [offender] to perform, is not an order of probation at all but rather a disguised order of commitment. The frustration that would arise from the [offender's] inherent inability to comply with an unreasonable condition of probation would negate the purpose of the statutory scheme of rehabilitation. The result of such a condition would not be rehabilitation. Rather, it would give the probationer a sense of unfairness, injustice and bitterness towards the system because the chance to reform would not be present. 169 W.Va. at 576, 289 S.E.2d at 196.

In order to avoid this deleterious effect on the rehabilitative goal of a restitutionary probation condition, it is generally held that even in the absence of statute, the sentencing court may not order restitution without first inquiring into and determining on the record the offender's ability to pay. *See State v. Hawkins, supra; People v. Cervantes,* 154 Cal.App.3d 353, 201 Cal.Rptr. 187 (1984); *People v. Gallagher,* 55 Mich. App. 613, 223 N.W.2d 92 (1974); *State v. Morgan,* 198 Mont. 391, 646 P.2d 1177 (1982); *Commonwealth v. Erb,* 286 Pa.Super. 65, 428 A.2d 574 (1980); *State v. Wilson,* 274 S.C. 352, 264 S.E.2d 414 (1980); *State v. Benoit,* 131 Vt. 631, 313 A.2d 387 (1973). *See also* A. Campbell, *Law of Sentencing* § 23 (1978); American Bar Association, *Standards for Criminal Justice* § 18–2.3(e)(i) (2d ed. 1980); *Model Penal Code* § 301.1(2)(h) (1974).

Secondly, several courts have held that a pre-imposition inquiry is constitutionally mandated. Conditioning probation on the payment of restitution restricts valuable interests of the prospective probationer.

The [offender] has an obvious "property" interest in his earnings or other income to be paid over in satisfaction of the restitutionary amount. Additionally he has an obvious "liberty" interest in his continued probationary "freedom" which is subject to termination upon his unjustified failure or refusal to meet the restitutionary condition.

*In re D.G.W.,* 70 N.J. 488, 502, 361 A.2d 513, 520–521 (1976). In addition, a defendant has a right to be sentenced on the basis of accurate information. *See United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). Accordingly, those courts which have addressed the issue have held that due process requires the sentencing court, prior to ordering restitution, to afford the defendant notice of and a hearing on the extent of the loss occasioned by his criminal conduct and his ability to pay without undue hardship. *People v. Baumann,* 176 Cal.App.3d 67, 222 Cal.Rptr. 32 (1985); *State v. Johnson,* 711 P.2d 1295 (Hawaii 1985); *In re D.G.W., supra. See also People v. Cook,* 81 Ill.2d 176, 40 Ill. Dec. 825, 407 N.E.2d 56 (1980); *Stacey v. State,* 30 Or.App. 1075, 569 P.2d 640 (1977). *But see People v. Williams,* 57 Mich.App. 439, 225 N.W.2d 798 (1975); *People v. Good,* 287 Mich. 110, 282 N.W. 920 (1938) (pre-imposition hearing not required by due process).

■ The idea of a pre-imposition hearing makes infinite sense. If the rights of the defendant are protected in the first instance and the factual basis for the imposition of such conditions appears on the record, the rehabilitative goal of the restitutionary condition will be preserved, and there will be no issue as to the reasonableness of such conditions at any subsequent revocation proceeding. The only issue will be whether the probationer's failure to pay was willful and contumacious. *See Arm-*

*stead v. Dale, supra.* Accordingly, we hold that before probation may be conditioned upon the payment of restitution, the sentencing court must conduct a hearing and make a finding on the record with respect to the extent of the loss suffered by the aggrieved party and the ability of the offender to pay without undue hardship to himself or his family.

This is not to say that the court is required to conduct a full evidentiary hearing on the propriety of ordering restitution as a condition of probation. An order requiring the defendant to pay restitution as a condition of probation is not the equivalent of and may not be substituted for a judgment of civil liability.[6] The offender must be given notice that he may be required to pay restitution as a condition of probation and an opportunity to contest the amount of the loss claimed and to advise the court of any reason he would not be able to pay restitution. These requirements can be met by a proceeding which meets due process standards.

W.Va.Code § 62–12–7 (1984 Replacement Vol.) authorizes the circuit court to order the probation officer to conduct a presentence investigation and prepare a written report concerning "such ... facts as may aid the court in determining the propriety and conditions of his release on probation." *See also* W.Va.R.Crim.P. 32(c)(1); 32(c)(2). When the sentencing court believes that restitution may be an appropriate condition of probation, it should direct the probation officer to include in the presentence investigation and report information concerning such matters as the nature and extent of the loss caused by the offender, the portion of the loss attributable to him when there are co-defendants and the offender's financial condition and employment prospects. This information should be disclosed to the offender prior to sentencing as required by Rule 32(c)(3)(A) of the Rules of Criminal Procedure,[7] thereby giving the offender no-

---

6. We wish to emphasize that restitution is not a substitute for a civil action for damages.

> While the order aids the victim, its true purpose, and the reason for its imposition, is the rehabilitative goal it serves by "impressing upon the offender the loss he has caused and his responsibility to repair that loss as far as it is possible to do so." *State v. Stalheim,* 275 Or. 683, 689, 552 P.2d 829, 832 (1976); *see State v. Mottola,* 84 N.M. 414, 504 P.2d 22 (1972). Thus a court's concern that the victim be fully compensated should not overshadow its primary duty to promote the rehabilitation of the defendant. *See* Best & Birzon, *Conditions of Probation; An Analysis,* 51 Geo.L.J. 809 (1963); Merceret, *Sentencing Alternatives to Fine & Imprisonment,* 31 U.Miami L.Rev. 387 (1977). (Footnote omitted)

*Commonwealth v. Fuqua,* 267 Pa.Super. at 508, 407 A.2d at 26. Put differently, "the criminal justice system should not be employed to supplement a civil suit or as a threat to coerce the payment of civil liability or to perform the functions of a collection agency. *State v. Sherr,* 9 Wis.2d 418, 424, 101 N.W.2d 77 (1960)." *Huggett v. State,* 83 Wis.2d at 803–804, 266 N.W.2d at 409. *See also State v. Garner, supra; People v. Calhoun,* 145 Cal.App.3d 568, 193 Cal.Rptr. 394 (1983).

> "'[T]his is not to say that restitution must be painless. "'Probation has an inherent sting, and restrictions upon the freedom of the probationer are realistically punitive in quality.'" *State v. M.D.J.,* 169 W.Va. at 575, 289 S.E.2d at 195, *quoting In re D.G.W.,* 70 N.J. at 498, 361 A.2d at 518 (1976).

> In many instances ... it will be necessary for a defendant to make substantial sacrifices in order to make restitution to the victims of his crimes. This is not an obstacle to an order requiring such restitution. Rather, where sacrifice is necessary, the probationer or parolee may learn to consider more carefully the consequences of his or her acts and thereby strengthen the offender's sense of responsibility. Thus, an order of restitution may properly require additional or alternative employment, a reduction of expenses, and even a temporary change in lifestyle in order to achieve that sense of responsibility which signals effective rehabilitation. The true rehabilitative purpose of restitution is well served when a probationer or parolee is called upon to make reasonable sacrifices in order to compensate those who have sustained losses as a result of his criminal conduct. The rehabilitative goal is defeated only when the payments ordered by the court are so unreasonable in view of the defendant's financial circumstances and ability to work that, despite good faith efforts, the defendant cannot hope to comply.

*Commonwealth v. Wood,* 300 Pa.Super. 463, 468, 446 A.2d 948, 950 (1982).

7. W.Va.R.Crim.P. 32(c)(3)(A) provides:

> At a reasonable time before imposing sentence the court shall permit the defendant and his counsel to read the report of the presentence investigation exclusive of any recommendation as to sentence, but not to the ex-

tice of the matters contained therein. At the sentencing hearing, the court should invite the offender to comment upon the presentence report. The offender then has the burden of advising the court of any inaccuracies in the presentence report or of any reason that he would be unable to make restitution, presenting such evidence as the court, in its discretion, may deem relevant. W.Va.R.Crim.P. 32(c)(3)(A). After all the evidence is heard, it is incumbent on the sentencing court to enter in the record findings of fact supporting its decision as to the propriety, amount and method of paying restitution.

■ We believe this summary procedure is ideally suited to the situation. It does not unduly burden sentencing proceedings, since in most instances, the factual basis for the restitution order will be found in the presentence report. At the same time, it is said that the requirements of due process are satisfied by disclosing the presentence report to the defendant and allowing him an opportunity prior to the imposition of the condition to refute the investigator's findings [8] and to present evidence of his inability to comply. This approach has been sanctioned by a number of jurisdictions. See State v. Garner, 115 Ariz. 579, 566 P.2d 1055 (1982); People v. Baumann, supra; People v. Gallagher, supra; State v. Farrell, 676 P.2d 168 (Mont. 1984); State v. Lack, 98 N.M. 500, 650 P.2d 22 (1982); State v. Harris, supra; In re D.G.W., supra.

■ In the case before us, the circuit court did not afford the petitioner the benefit of even the summary procedure we have

outlined. Nor is there any evidence in the record of the sentencing hearing from which we could conclude that the circuit court's decision to condition probation on payment of restitution and court costs was appropriate in view of the circumstances existing at the time. In view of the failure of the record to reveal the factual basis for the circuit court's decision to order restitution and payment of court costs, we are unable to conclude that they were lawful conditions of probation.

"There is no question that probation cannot properly be revoked if the condition of probation allegedly violated is invalid. Louk v. Haynes, [159 W.Va. 482], 223 S.E.2d 780 (1976)." State v. M.D.J., 169 W.Va. at 571, 289 S.E.2d at 193. See also People v. Heil, 79 Mich.App. 739, 262 N.W.2d 895 (1978). Accordingly, we conclude that the circuit court abused its discretion in revoking the petitioner's probation for his failure to pay restitution, court costs and attorney fees.

The circuit court also concluded that the petitioner had violated his probation by consuming alcoholic beverages during probation. Evidence on this issue consisted of the testimony of the petitioner's sister, who stated that the petitioner had come home drunk several nights, and of Paul Koch, the petitioner's supervising probation officer in Ohio, who testified that he had smelled alcohol on the petitioner on one occasion. Koch also testified, however, that he was unaware of any prohibitionary restriction on the petitioner's consumption of alcohol. Koch stated that he was aware that the petitioner had had a problem with alcohol in the past and had advised the petitioner

tent that in the opinion of the court the report contains diagnostic opinions which, if disclosed, might seriously disrupt a program of rehabilitation; or sources of information obtained upon a promise of confidentiality; or any other information which, if disclosed, might result in harm, physical or otherwise, to the defendant or other persons. The court shall afford the defendant and his counsel an opportunity to comment on the report and, in the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in it.

8. We do not mean to imply that the probation officer assumes the fact-finding function of the

circuit court. W.Va.Code § 62–12–9 clearly anticipates that ordering payment of restitution as a condition of probation is a judicial function. Thus, although the probation officer may make recommendations in the presentence report, the determination of the propriety, amount and method of paying restitution is the responsibility of the sentencing court and may not be delegated to any other officer. See State v. Hawkins, supra; People v. Cervantes, supra; State v. Johnson, 711 P.2d 1295 (Hawaii 1985); In re D.G.W., supra; People v. Fuller, 57 N.Y.2d 152, 455 N.Y.S.2d 253, 441 N.E.2d 563 (1982); Commonwealth v. Wood, supra.

to limit his intake of intoxicants, but had not ordered the petitioner to abstain from drinking.

We do not question that the circuit court has the authority, pursuant to W.Va.Code § 62–12–9, to order, as a condition of probation, that the offender refrain from using intoxicants, at least where the offender's criminal conduct was related to the use or abuse of such substances. *See* Annot., 19 A.L.R.4th 1251 (1983); Annot., 37 A.L.R.Fed. 843 (1985). However, where, as appears to be the case here, the probationer is given conflicting instructions regarding the use of intoxicants, we do not believe probation should be revoked for the probationer's failure to comply with the prior, more restrictive instructions. Since it appears that Koch gave the petitioner the impression that the restriction on his consumption of alcoholic beverages was no longer in effect, we believe the court acted arbitrarily in revoking probation for the petitioner's drinking while under Koch's supervision.

In sum, we conclude that the circuit court abused its discretion in revoking the petitioner's probation in this case. It is, therefore, ordered that the petitioner be remanded to the Circuit Court of Marshall County with instructions that the court structure a proper probation program. If the circuit court fails to devise such a plan within sixty days, the petitioner shall be unconditionally discharged from custody.

Prisoner remanded.

NEELY, Justice dissenting:

The majority today *implies* that it is the duty of the sentencing court, before conditioning probation on making restitution, to prove that the probationer will be able to make such restitution. Because I believe the majority has it backwards, I dissent.

The majority today *holds* that, in order for restitution to be a valid condition of probation, the sentencing court must conduct an inquiry into the probationer's financial condition and employment prospects and enter into the record at a hearing findings of fact supporting its decision as to the propriety, amount and method of pay-

ing restitution. Such action is commanded neither by statute nor by the United States or West Virginia *Constitutions.*

W.Va.Code 62–12–9 [1983] provides in pertinent part:

> In addition, the court may impose, subject to modification at any time, any other conditions which it may deem advisable, including, but not limited to, any of the following: (1) That he shall make restitution or reparation, in whole or in part, immediately or within the period of probation, to any party injured by the crime for which he has been convicted.

There is no requirement that the judge make any inquiry into or findings of fact regarding the probationer's ability to pay.

Due process requires that a person be provided with notice and a hearing before being deprived of life, liberty or property. The court cites *In re D.G.W.*, 70 N.J. 488, 361 A.2d 513 (1976) for the proposition that:

> The [offender] has an obvious "property" interest in his earnings or other income to be paid over in satisfaction of the restitutionary amount. Additionally, he has an obvious "liberty" interest in his continued probationary "freedom" which is subject to termination upon his unjustified refusal to meet the restitutionary condition.

*Id.* at 502, 361 A.2d at 520–21.

The offender petitioning for probation is given ample notice of the fact that restitution may be imposed as a condition of probation by the statute itself. *W.Va.Code* 62–12–9 [1983]. Further, the probation hearing, at which restitution is imposed as a condition of probation, provides the offender with an opportunity to explain why he will be unable to make restitution. Moreover, the probation revocation hearing, at which probation may be revoked if the offender has failed to comply with the restitution condition of his probation, provides the probationer with an opportunity to show that the restitution condition of his probation was unreasonable or that his failure to comply with the condition was justified.

Probation is not an entitlement. It is a gesture of mercy rendered by a court, often prompted by a belief that the convict can better be rehabilitated by undertaking the responsibilities of an upstanding citizen then by the desocializing rigors of prison life. But probation is not supposed to be a vacation at Club Med. It must be remembered that the probationer has committed a crime against the people of this State for which imprisonment is deemed an appropriate punishment. As such, the convict receiving probation must and should bear certain burdens. Among the burdens that the legislature has seen fit to impose upon the probationer is the *duty* to make restitution to the victims of his crimes. He should also bear the burden of a presumption that he can obtain employment suitable to discharge that duty.

When a convict is granted probation conditioned on restitution, the court should presume that he will be able to find a minimum wage job and apply his earnings to making reasonable restitution. At his probation hearing, the convict should be entitled to rebut this presumption by showing: (1) that the amount of restitution is improperly calculated; (2) that he cannot reasonably be expected to find minimum wage employment, e.g., that he is seriously disabled or resides in an area afflicted with an unusually high unemployment rate; or (3) that, even should he obtain minimum wage employment, he cannot reasonably be expected to meet the restitution schedule imposed by the court without inflicting undue hardship on himself or his innocent family. A probation hearing at which the convict is permitted to make such a showing does not deny him due process.

Undue hardship on the probationer and undue hardship on his family should be assessed by two different standards. Undue hardship on his innocent family should be found when the family would suffer a significant reduction in its customary lifestyle. However, any person who has committed a crime against innocent victims and has been granted unmerited mercy by being placed on probation should not expect to live well.

Restitution is designed to facilitate the rehabilitation of the probationer. A willingness to make restitution is an indication that the convict desires to be rehabilitated. Obversely, a cavalier attitude toward restitution reflects a cavalier attitude toward rehabilitation. A sentencing judge is perfectly justified in denying a convict probation unless he finds that the convict has a heartfelt desire, born of moral guilt, to mend his errant ways.[1]

When a probationer fails to comply with the restitution condition of his probation, due process requires that a hearing be held before his probation is revoked. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). At that hearing, the court should presume that the petitioner has wilfully and contumaciously failed to make restitution. The probationer should then have the opportunity to show that, despite good faith and arduous, unflagging effort, he was unable to comply with the restitution schedule. If the probationer is unable to make this showing, the sentencing court may, and usually should, remand the probationer to prison.

Probation conditioned on restitution is profitable for all parties concerned. It is profitable for the victim because he recoups his losses. It is profitable for the convict because he is not confined to prison. And it is profitable for the state because it costs money to keep a man in prison. Yet the scheme created by the majority will often make probation conditioned on restitution less attractive to a sentencing court. By interposing procedural requirements making the imposition and enforcement of a restitution condition more difficult, the majority invites a sentencing court to follow the path of least resistance, viz., sending the convict to prison. The result is that everyone—the victim, the convict and the state—loses.

---

1. I do not mean to imply that anyone should be denied probation when poverty, disability or other circumstances beyond his control make it *impossible* for him to make restitution. I say only that a convict whose "inability" to pay stems from sloth or an obdurate nature may and should be denied probation.

There is no better example of the infelicitous nature of the majority's scheme than the facts of the case before us. On 12 April 1984, the Marshall County Circuit Court placed petitioner on probation for a period of one year. At that time the court informed the petitioner that a condition of his probation would be that he make restitution to the victims of his crimes in the amount of $986.03. Petitioner was present and represented by counsel at the hearing granting him probation. At no time during the hearing, nor at any time thereafter, did the petitioner or his counsel object to $986.03 as being an incorrect assessment of the loss suffered by the victims of his crimes. Nor did the petitioner or his counsel indicate that petitioner would be unable to make restitution in that amount without undue hardship to himself.[2] Indeed, counsel for the petitioner represented to the court that the petitioner had a job prospect in Gallipolis, Ohio, where he would be permitted to live with his sister and her husband.

On 12 April 1984, petitioner's probation officer informed him that restitution was to be made in monthly payments of slightly over one hundred dollars. Nowhere does the record reflect that petitioner raised any objection to this payment schedule. Supervision of petitioner was transferred to Ohio, where he took up residence with his sister.

While living in Gallipolis, Mr. Fox worked at two jobs. As of 20 September 1984, he had earned a net pay of approximately $1,300.00. As of 12 October 1984, he had yet to make any of his monthly restitution payments.

At the probation revocation hearing, petitioner and his counsel failed to submit any evidence of his expenses during the probation period. His sister, Mrs. Jody Blankenship, testified that petitioner had paid her a total of $35.00 during the entire time he had resided with her. Petitioner's sister further testified that petitioner's father had purchased for him a truck, for which she had given petitioner a set of tires. Although Mrs. Blankenship speculated that

petitioner may have spent $30.00 in auto insurance and other money on clothing and miscellaneous items, no evidence of these expenditures was offered to the court by the petitioner. Counsel for the petitioner intimated that petitioner had spent a substantial sum of money on repairs to his truck. However, no proof of these expenses was offered. Nor was there any evidence submitted to indicate that petitioner required the use of the truck in order to travel to and from his place of employment.

In short, then, Mr. Fox was employed and earning money, living virtually rent-free with his sister, and unhampered by accident, illness, or unforeseen financial disaster. Yet over the course of five months during which he earned approximately $1300.00, he paid not one cent of the restitution imposed by the court as a condition of his probation. At the probation revocation hearing Mr. Fox made virtually no effort to justify such a flagrant refusal to comply with the terms of his probation. The majority holds, however, that the circuit court may not revoke Mr. Fox's probation because, before imposing the restitution condition, it did not engage in a highly speculative and resource-consuming inquiry into Mr. Fox's financial prospects and enter findings of "fact" into the record. As a result, Mr. Fox will continue to walk among us, availing himself of all of the privileges of freedom while neglecting his duty to make restitution. And he may continue to do so until the circuit court can generate enough red tape to prove to the majority what is already obvious.

I am authorized to say that Justice BROTHERTON joins me in this dissent.

McHUGH, Justice, concurring:

The dissenting opinion grossly distorts the holding of the majority opinion. Further amplification of the majority's position is unnecessary in light of the scarcity of legal principles discussed in the dissent.

---

2. Mr. Fox has no dependents.

Concisely stated, the dissent is long on rhetoric and short on law.